UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UMAR ADEYOLA,

    Plaintiff,

v.

SHITIZ SRIWASTAVA,
UNIVERSITY OF WEST VIRGINIA,
MOHAMMED MOUBAREK,
TOM GERA and
UNITED STATES OF AMERICA,

    Defendants.

Civil Action No. TDC-22-0781

**MEMORANDUM OPINION**

Plaintiff Umar Adeyola, a former federal inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), has filed this civil action asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80 (2018), and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Adeyola asserts that he has Multiple Sclerosis ("MS") and that while he was incarcerated at FCI-Cumberland, Defendants failed to diagnose and properly treat this condition and other medical conditions, including asthma and chronic pain. He names as defendants the United States of America, Dr. Mohammed Moubarek, the Clinical Director at FCI-Cumberland, and Tom Gera, a physician's assistant at FCI-Cumberland (collectively, "the Federal Defendants"); West Virginia University ("WVU"); and Dr. Shitiz Sriwastava, a neurologist employed by WVU who practices at Ruby Memorial Hospital in Morgantown, West Virginia. Pending before the Court are Dr. Sriwastava's Motion to Dismiss, ECF Nos. 9, 27, and WVU's Motion to Dismiss, ECF No. 26, which are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local

R. 105.6. For the reasons set forth below, both Motions will be GRANTED. A separate Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment filed by the Federal Defendants, ECF No. 38, is not yet fully briefed and will be resolved separately.

## BACKGROUND

In his Complaint, Adeyola alleges that he was diagnosed with MS in July 2018. When he entered the custody of the Federal Bureau of Prisons ("BOP") in January 2019, he was designated to the Federal Medical Center in Butner, North Carolina, which provides specialized medical care to federal inmates. At some point, Adeyola was transferred to FCI-Cumberland and was placed under the medical care of Dr. Moubarek and Gera. As relevant here, on January 27, 2020, Adeyola was sent to Ruby Memorial Hospital in Morgantown, West Virginia, which is part of the WVU Health System, to receive a neurological examination by Dr. Sriwastava, who is an employee of the West Virginia University Board of Governors. Dr. Sriwastava recommended a magnetic resonance imaging test ("MRI") relating to the spine ("MRI Spinal Lumbar") to confirm the MS diagnosis and declined to provide any treatment until the test was performed.

Adeyola was returned to FCI-Cumberland and continued to have symptoms of MS, including tremors, weakness, and pain. On March 11, 2020, Adeyola was sent back to Ruby Memorial Hospital to receive the MRI Spinal Lumbar ordered by Dr. Sriwastava, but he refused to agree to the test because he argued that there was already ample medical documentation that he had MS. On March 13, 2020, Adeyola mailed certain medical records to Dr. Sriwastava, including prior MRI results, and requested medical treatment even without an MRI Spinal Lumbar or other diagnostic tests. According to Adeyola, Dr. Sriwastava did not respond to his mailing. In July 2020, Adeyola was released from BOP custody and now resides in New Jersey.

2

On March 31, 2022, Adeyola filed the Complaint in this case in which he alleges (1) violations of the FTCA, based on alleged negligence by Defendants in providing or failing to provide medical care while was incarcerated at FCI-Cumberland; and (2) under *Bivens*, violations of the Eighth Amendment to the United States Constitution based on the allegation that Defendants' failure to treat properly his MS and other medical conditions constituted deliberate indifference to Adeyola's serious medical needs.

## DISCUSSION

Defendants WVU and Dr. Sriwastava have separately filed Motions to Dismiss in which they seek dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6), including based on the argument that Adeyola's claims are barred by the applicable statute of limitations. WVU also argues that the claims against it are barred by the doctrine of sovereign immunity. The Court will address the two Motions separately.

**I.   WVU**

WVU first argues that the claims against it must be dismissed because it has not waived sovereign immunity. Although WVU explores various arguments based on sovereign immunity, the most straightforward sovereign immunity analysis is based on the Eleventh Amendment to the United States Constitution, which provides that a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 750, 753 (stating that "the Eleventh Amendment does not define the scope of the States' sovereign immunity," but it is "one particular exemplification of that immunity"); see *Alden v. Maine*, 527 U.S. 706, 713 (1999) (noting that the states' sovereign immunity is addressed by, but not limited by, the Eleventh Amendment); *see also Franchise Tax*

3

*Bd. v. Hyatt*, 139 S. Ct. 1485, 1492 (2019) (holding that "States retain their sovereign immunity from private suits brought in the courts of other States"). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99.

Here, WVU is a state agency. *See W. Va. Univ. Bd. of Governors* ex rel. *W. Va. Univ. v. Rodriguez*, 543 F. Supp. 2d 526, 535 (N.D. W. Va. 2008) ("West Virginia University and its Board of Governors are arms and alter egos of the State of West Virginia."). Specifically, courts have held that WVU has sovereign immunity from suits in federal court pursuant to the Eleventh Amendment. *See, e.g., Young v. W. Va. Univ.*, No. 21-CV-35, 2022 WL 816041, at *2–3 (N.D.W. Va. Mar. 17, 2022); *Al-Asbahi v. W. Va. Univ. Bd. of Governors*, No. 15CV144, 2017 WL 402983, at *10 (N.D.W. Va. Jan. 30, 2017) (holding that WVU was immune from federal due process, federal civil rights, and state common law claims), *aff'd*, 724 F. App'x 266 (4th Cir. 2018). Thus, Adeyola's claims against WVU, a State agency, are barred by sovereign immunity pursuant to the Eleventh Amendment. WVU's Motion will therefore be granted. Accordingly, the Court need not and does not address WVU's remaining arguments.

Finally, Adeyola's Motion to File a Surreply, ECF No. 32, will be denied because the proposed surreply brief addresses only arguments not necessary to the Court's ruling. *See* D. Md. Local R. 105.2(a).

## II.   Dr. Sriwastava

In his Motion, Dr. Sriwastava primarily argues that the claims against him should be dismissed for lack of personal jurisdiction. Under Rule 12(b)(2), the plaintiff has the burden to establish personal jurisdiction. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that the defendant is properly subject to this Court's jurisdiction. *Id.* at 60. In

4

evaluating the plaintiff's showing, the Court must accept the plaintiff's allegations as true and must resolve any factual conflicts in the plaintiff's favor. *Id.*

For a district court to assert personal jurisdiction over a non-resident defendant, the exercise of jurisdiction: (1) "must be authorized under the state's long-arm statute"; and (2) "must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because courts have interpreted the Maryland long-arm statute to reach as far as the Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

A court may exert personal jurisdiction over a non-resident defendant in keeping with due process if the defendant has "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts distinguish between two types of personal jurisdiction: general and specific. A court has general personal jurisdiction over out-of-state defendants whose "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). A court has specific personal jurisdiction when the defendant has "purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In assessing whether specific jurisdiction exists, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the

plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (quoting *ALS Scan, Inc.*, 293 F.3d at 712). A plaintiff must prevail on each prong. *Id.*

Here general jurisdiction does not exist because Dr. Sriwastava is a citizen of West Virginia and employed in West Virginia. Dr. Sriwastava is not licensed to practice medicine in Maryland and does not practice in Maryland.

As for specific jurisdiction, it is undisputed that Dr. Sriwastava's only medical examination of Adeyola occurred in West Virginia, and there is no claim that Dr. Sriwastava ever traveled to Maryland to provide medical care to Adeyola. Adeyola argues instead that Dr. Sriwastava has sufficient contacts with Maryland because the medical providers at FCI-Cumberland referred Adeyola to Dr. Sriwastava for treatment, and that he presumably provided medical services to other FCI-Cumberland inmates referred in the same manner. When a defendant has no physical presence in the forum state, specific jurisdiction requires that the defendant engaged in purposeful availment "of the privilege of conducting activities in the State." *Perdue Foods LLC*, 814 F.3d at 189. Among the factors considered when assessing whether the purposeful availment requirement is met are:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018)). Here, Dr.

Sriwastava had no offices or agents in Maryland and did not practice medicine or otherwise engage in business activities in Maryland, and he had no property in Maryland. There is no allegation or evidence that Dr. Sriwastava engaged in any solicitation or recruitment of patients from FCI-Cumberland. Even to the extent that there was any broader arrangement for the provision of health care to FCI-Cumberland inmates at Ruby Memorial Hospital, any such arrangement likely would have been with WVU, not with individual doctors. There are no agreements or contracts requiring that Dr. Sriwastava perform any medical treatment in Maryland. In the absence of any of these indicia of purposeful availment, and where Dr. Sriwastava was licensed to practice medicine only in West Virginia, there is no basis to conclude that he could have reasonably anticipated that he would be haled into this Court.

Notably, other federal courts have found a lack of personal jurisdiction over an out-of-state medical provider who provided care to a prisoner incarcerated in a different state, or under similar circumstances. *See, e.g., Ha v. Gulick*, 567 F. Supp. 3d 1267, 1272 (D. Or. Oct. 19, 2021) (holding that an Idaho physician who treated an Oregon prisoner in Idaho but was not employed by the Oregon Division of Correction, not licensed to practice medicine in Oregon, and did not provide treatment to patients in Oregon, was not subject to personal jurisdiction in Oregon, even though he owned property in Oregon and had treated other Oregon prisoners in the past); *cf. Donohue v. Ashe*, No. 08-cv-459, 2009 WL 425951, at *4 (D.N.H. Feb. 19, 2009) (finding that New Hampshire lacked personal jurisdiction over medical providers who treated the plaintiff at a Massachusetts prison immediately before he was transferred to a New Hampshire prison).

Accordingly, the Court finds that it lacks personal jurisdiction over Dr. Sriwastava and will grant Dr. Sriwastava's Motion to Dismiss. The Court therefore need not address Dr. Sriwastava's additional arguments.

## CONCLUSION

For the foregoing reasons, WVU's Motion to Dismiss will be GRANTED, Dr. Sriwastava's Motion to Dismiss will be GRANTED, and Adeyola's Motion to File a Surreply will be DENIED. A separate Order shall issue.

Date: March 22, 2022

THEODORE D. CHUANG
United States District Judge