UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UMAR ADEYOLA,

    Plaintiff,

v.

MOHAMMED MOUBAREK,
TOM GERA and
UNITED STATES OF AMERICA,

    Defendants.

Civil Action No. TDC-22-0781

**MEMORANDUM OPINION**

Plaintiff Umar Adeyola, a former federal inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), has filed this civil action asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80 (2018), and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Adeyola asserts that he has Multiple Sclerosis ("MS") and that while he was incarcerated at FCI-Cumberland, Defendants failed to diagnose and properly treat this condition and other medical conditions. He named as defendants the United States of America; Dr. Mohammed Moubarek, the Clinical Director at FCI-Cumberland; and Tom Gera, a physician's assistant at FCI-Cumberland (collectively, "the Federal Defendants"); West Virginia University ("WVU"); and Dr. Shitiz Sriwastava, a neurologist employed by WVU. Dr. Sriwastava and WVU filed Motions to Dismiss, which were previously granted. The Federal Defendants have filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Federal Defendants' Motion will be GRANTED.

## BACKGROUND

The Court provided certain factual background in its memorandum opinion granting the Motions to Dismiss filed by WVU and Dr. Sriwastava, which is incorporated by reference. *Adeyola v. Sriwastava*, No. TDC-22-0781, 2023 WL 2600317, at *1-2 (D. Md. Mar. 22, 2023). In his Complaint, Adeyola alleges that he was diagnosed with MS in July 2018. When he entered the custody of the Federal Bureau of Prisons ("BOP") in January 2019, he was designated to the Federal Medical Center in Butner, North Carolina, which provides specialized medical care to federal inmates. At some point, Adeyola was transferred to FCI-Cumberland and was placed under the medical care of Dr. Moubarek and Gera. On December 31, 2019, and again on January 13 and 16, 2020, Adeyola reported to sick call and complained of extreme dizziness and pain. On January 27, 2020, Adeyola was sent to a hospital affiliated with WVU in Morgantown, West Virginia to receive a neurological examination by Dr. Sriwastava. Dr. Sriwastava recommended a magnetic resonance imaging test ("MRI") relating to the spine ("MRI Spinal Lumbar") to confirm the MS diagnosis and declined to provide any treatment until the test was performed.

Adeyola was returned to FCI-Cumberland and continued to show symptoms of MS, including tremors, weakness, and pain. Dr. Moubarek and Gera each signed off on clinical reports regarding Adeyola's continued and worsening symptoms. Adeyola emailed Gera on February 27, 2020 regarding Adeyola's continued pain and symptoms and inquired as to how the BOP planned to address his symptoms.

On March 3, 2020, Adeyola was sent to an outside provider, Gonzaga Comprehensive Rehabilitation, to receive a physical therapy assessment and treatment. The physical therapist noted that Adeyola suffered from, among other things, postural dysfunction, gait deviations with

2

a history of falls, and limited range of motion in his trunk. Dr. Moubarek reviewed the physical therapist's report.

On March 9, 2020, Gera evaluated Adeyola at FCI-Cumberland after Adeyola had complained of extreme MS pain and symptoms. Gera noted that Adeyola reported cramping pain as a 7 on a 10-point scale and that Adeyola suffered from compromised coordination and gait caused by MS.

On March 11, 2020, Adeyola was sent back to WVU to receive the MRI Spinal Lumbar as ordered by Dr. Sriwastava, but Adeyola refused the test because he argued that there was already ample medical documentation of his MS. On March 13, 2020, Adeyola mailed certain medical records to Dr. Sriwastava, including prior MRI results, and requested medical treatment even without an MRI Spinal Lumbar or other diagnostic tests. According to Adeyola, Dr. Sriwastava did not answer his correspondence.

On March 16, 2020, Adeyola explained to Gera why he refused the testing at WVU. On April 15, 2020, Gera had a phone conversation with Dr. Sriwastava, who despite having received information on prior MRIs, again requested another MRI on Adeyola.

On June 10, 2020, Adeyola went to sick call complaining of pain, discomfort, difficulty urinating and defecating, and difficulty walking. Gera ordered laboratory work relating to Adeyola's complaints of difficulty urinating and defecating. He also noted that the focus of treatment would be to have the neurologist evaluate the results of the prior MRIs or a new MRI to confirm the MS diagnosis and provide treatment. After another sick call visit on June 29, 2020, Gera stated in the medical records that he would follow up with the neurologist to see if a second set of MRI reports had been received and to confirm the diagnosis of progressive MS. On July 2,

3

2020, Gera called Dr. Sriwastava and left a message regarding a review of the MRI records sent to and received by his office the preceding week.

On July 15, 2020, Adeyola was ordered released from FCI-Cumberland and BOP custody after a Motion for Compassionate Release that he filed in the United States District Court for the Western District of New York was granted. He now resides in New Jersey.

On March 31, 2022, Adeyola filed the Complaint in this case in which he alleges (1) a claim against the United States for a violation of the FTCA, based on alleged negligence by Dr. Moubarek and Gera in providing or failing to provide medical care while he was incarcerated at FCI-Cumberland; and (2) claims against Dr. Moubarek and Gera under *Bivens* for violations of the Eighth Amendment to the United States Constitution based on the allegation that the failure properly to treat his MS and other medical conditions constituted deliberate indifference to Adeyola's serious medical needs.

## DISCUSSION

The Federal Defendants have filed a Motion to Dismiss, or in the Alternative, for Summary Judgment in which they argue that: (1) a *Bivens* remedy is unavailable because it would require an extension of *Bivens* to a new context; (2) Adeyola failed to exhaust administrative remedies; (3) Defendants are entitled to sovereign immunity for claims asserted against them in their official capacity; and (4) Defendants are entitled to qualified and statutory immunity.

### I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations

4

in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Although the Federal Defendants have submitted exhibits with their Motion, when deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of the Federal Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Where Adeyola has not submitted such a filing, the Court may construe the

5

Federal Defendants' Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II.   Statutory Immunity

As a threshold matter, Defendants argue that Gera, a physician's assistant, is immune from suit because he was a commissioned officer of the United States Public Health Service ("PHS") at the times relevant to Adeyola's allegations. By statute, in light of the availability of FTCA claims against the United States:

> The remedy against the United States provided by [the FTCA] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding . . . .

42 U.S.C. § 233(a) (2018). This provision "precludes *Bivens* actions against individual PHS officers or employees" for harm arising from the performance of their duties. *Hui v. Castaneda*, 559 U.S. 799, 812 (2010) (holding that a *Bivens* claim against prison doctors who were PHS personnel

6

was barred by absolute immunity under § 233(a)). Therefore, Adeyola's *Bivens* claim against Gera is barred by this statutory immunity. Gera will be dismissed from this case as a defendant.

### III. Exhaustion of Administrative Remedies

Defendants argue that all of Adeyola's claims must be dismissed for failure to exhaust administrative remedies. Under the FTCA, inmates may file tort claims against the United States based on the conduct of its employees within the scope of employment but may not assert claims of personal liability against prison officials. *See Carlson v. Green*, 446 U.S. 14, 19, 21 (1980). Under *Bivens*, inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or against prison officials in their official capacities. *See id.* at 18; *FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996). Both the FTCA and *Bivens* require exhaustion of administrative remedies prior to bringing suit, but the exhaustion requirements are different.

#### A. FTCA

For a tort claim under the FTCA, a prisoner must first exhaust the administrative process established under the FTCA, consisting of (1) presenting the relevant federal agency with a claim describing, with particularity, the alleged injury and damages; and (2) either receiving a written denial of the claim from the agency or waiting six months from the date of filing without obtaining a final agency disposition. *See* 28 U.S.C. § 2675(a). The plaintiff's tort claim must be presented to the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b); *see Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994). Furthermore, the tort claim, as presented to an agency, must be "sufficient to enable the agency to investigate" and must place "a sum certain value on [the] claim." *Id.* at 517. A plaintiff must strictly comply with the procedural

7

requirements. *See, e.g., Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) ("Precisely because the FTCA constitutes a waiver of sovereign immunity, plaintiffs ... must file an FTCA action in careful compliance with its terms."). A plaintiff bears the burden of proving an unequivocal waiver of sovereign immunity by showing compliance with the administrative claim requirements. *See Lumpkins v. United States*, 187 F. Supp. 2d 535, 538 (D. Md. 2002).

Defendants assert that Adeyola has failed to comply with the administrative process for FTCA claims. Misty Shaw, a paralegal for the BOP's Mid-Atlantic Office, conducted a search in the National Tort Database of administrative tort claims for any relevant claims submitted by Adeyola for adjudication. Shaw's search did not reveal any administrative claims regarding the allegations in the Complaint. Shaw further states that Adeyola filed one tort claim regarding property loss in 2020.

Though Adeyola contends that he exhausted his administrative remedies as to the FTCA claim, he is mistaken. Adeyola does not claim to have submitted an FTCA administrative claim to the BOP seeking damages for allegedly negligent medical care. Rather, in opposing the Motion on this issue, Adeyola asserts only that he exhausted administrative remedies in relation to the Motion for Compassionate Release that he filed under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (2018), by submitting a request for compassionate release to the Warden at FCI-Cumberland prior to filing that motion in the Western District of New York. Because the Warden did not respond within the time required under the First Step Act, that sentencing court determined that "the exhaustion requirement has therefore been satisfied." Decision & Order, *United States v. Adeyola*, No. 16-CR-138, at 5 (W.D.N.Y. July 14, 2020), Opp'n Ex. 302, ECF No. 41-3. The sentencing court's ruling on exhaustion of administrative remedies as to Adeyola's Motion for

Compassionate Release is irrelevant to whether the separate FTCA exhaustion requirements were completed.

Where Adeyola failed to file any administrative FTCA claim regarding the alleged negligence in the provision of medical care, the Court finds that Adeyola did not exhaust administrative remedies as to his FTCA claim. Accordingly, the FTCA claim fails.

**B.     Bivens**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It applies to *Bivens* actions alleging constitutional violations. *Id.* at 524; *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust administrative remedies where the plaintiff did not appeal his administrative claim through all four stages of the Bureau of Prisons grievance process).

Exhaustion requires that prisoners pursue a claim through all available stages in the administrative process until they receive a final denial of the claim. *Chase v. Peay*, 286 F. Supp. 523, 530 (D. Md. 2003); *Gibbs*, 986 F. Supp. at 943-44; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming the dismissal of a prisoner's claim for failure to exhaust administrative remedies because the prisoner "never sought intermediate or full administrative review after the

9

prison authority denied relief"). A claim that has not been exhausted may not be considered. *See Jones v. Bock*, 549 U.S. 199, 219-20 (2007).

The BOP has established an Administrative Remedy Program, 28 C.F.R. §§ 542.10-542.19 (2023), for inmates to resolve grievances related to their confinement. This process consists of the following steps: (1) the inmate is first required to present the issue informally to staff, pursuant to procedures to be established by the Warden of the prison; (2) if the inmate is unable to resolve the issue informally, the inmate must file a written Administrative Remedy Request with the Warden within 20 days of the date of the incident in question; (3) if the Warden's response is unsatisfactory, the inmate must file an appeal to the BOP Regional Director within 20 days of the Warden's response; and (4) if the inmate is still not satisfied, the inmate must file an appeal to the BOP Office of General Counsel in Washington, D.C. within 30 days of the date of the Regional Director's response. 28 C.F.R. §§ 542.13-542.15. For a *Bivens* claim, the exhaustion requirement is satisfied by the completion of this process, not by the filing of an administrative tort claim under the FTCA. *See Lambert v. United States*, 198 F. App'x 835, 840 (11th Cir. 2006); *Roszycka v. Whitehead*, No. DKC-09-3210, 2010 WL 2925054, at *3 n.2 (D. Md. July 21, 2010); *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 367 (E.D.N.Y. 2005) (citing cases).

Under the PLRA, exhaustion may be excused only if the administrative procedure is not actually available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones."). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An administrative procedure is not available when prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates" such that it effectively "operates as a simple

10

dead end;" the procedure is so "opaque" that it is practically incapable of use; or prison administrators actively thwart inmates from filing grievances, "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

Here, Adeyola has not stated whether he completed these required steps before filing his *Bivens* claims. Defendants, however, have the burden to establish a failure to exhaust administrative remedies, which is an affirmative defense. *See Jones*, 549 U.S. at 216; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). They have provided no evidence one way or the other on whether Adeyola completed these steps. Accordingly, the Court will not grant the Motion on the *Bivens* claims based on exhaustion of administrative remedies.

## IV. Judgment Bar

However, the Court finds that even if Adeyola had exhausted administrative remedies as to his *Bivens* claim, the *Bivens* claim cannot proceed because it is barred by this Court's disposition of Adeyola's FTCA claim.

28 U.S.C. § 2676 provides that a judgment under the FTCA is "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. "'[O]nce a plaintiff receives a judgment (favorable or not) in an FTCA suit,' the bar is triggered, and 'he generally cannot proceed with a suit against an individual employee based on the same underlying facts.'" *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quoting *Simmons v. Himmelreich*, 578 U.S. 621, 625 (2016)).

The United States Court of Appeals for the Fourth Circuit has held that § 2676 bars *Bivens* claims against a government employee when a judgment has been entered on an FTCA claim "arising out of the same actions, transaction, or occurrences" as the *Bivens* claim. *Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009) (citations omitted). In *Unus*, the plaintiffs asserted FTCA and

11

*Bivens* claims in the same action based on an incident in which federal agents allegedly violated First and Fourth Amendment rights during a search of a residence and the detention of individuals during the search. *Id.* at 113-14, 120. The court concluded that the district court's grant of summary judgment on the FTCA claims barred consideration of the *Bivens* claims. *Id.* at 122. In so ruling, the court noted that "[l[itigants frequently face tough choices," and that when "the plaintiffs chose to pursue their claims against the federal agent defendants through *Bivens* as well as under the FTCA . . . they risked having a judgment on the FTCA claims operate to bar their *Bivens* theories." *Id.* The Fourth Circuit has also upheld a district court's dismissal of *Bivens* claims upon the dismissal, on administrative exhaustion grounds, of FTCA claims arising out of the same subject matter. *See Freeze v. United States*, 343 F. Supp. 2d 477, 481 (M.D.N.C. 2004), *aff'd* 131 F. App'x 950, 950 (4th Cir. 2005) (per curiam); *see also Sanchez v. McLain*, 867 F. Supp. 2d 813, 823 (S.D. W. Va. 2011) (citing *Freeze*).

Because Adeyola failed to exhaust administrative remedies with regards to his FTCA claims, and because Adeyola's *Bivens* claim arises out of "the same actions, transaction, or occurrences" as his FTCA claims, Adeyola's *Bivens* claim is barred and cannot be considered. *See Unus*, 565 F.3d at 122. As the Motion will be granted as to all claims, the Court need not consider the Federal Defendants' other arguments.

## CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: September 8, 2023

THEODORE D. CHUANG
United States District Judge